**DARIN M. SANDS**, OSB No. 106624
dsands@bradleybernsteinllp.com
ERIN BERNSTEIN* *admitted pro hac vice*
GINA ELLIOTT* *admitted pro hac vice*
**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, Oregon 97201
Telephone: 503.734.2480

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| RIDWELL, INC. | CASE NO.: 3:22-cv-00110-JR |
| PLAINTIFF, | |
| V. | RIDWELL'S OPPOSITION TO DEFENDANT WASHINGTON COUNTY'S MOTION TO DISMISS COMPLAINT |
| WASHINGTON COUNTY, OREGON, | REQUEST FOR ORAL ARGUMENT |
| DEFENDANT. | |

TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................. 1

III.   THIS COURT HAS JURISDICTION TO HEAR RIDWELL'S STATE LAW CLAIMS AND SHOULD
DENY DEFENDANT'S MOTION TO DISMISS THOSE CLAIMS ...................................... 4

   A.   The County's Temporary Ordinance Does Not Moot Ridwell's Claims ................ 4

      1.   Both Federal Case Law and State Law Statutory Standing Apply Where
      Defendant's Behavior Can Recur ...................................................................... 4

      2.   Ridwell's State Law Claims are Not Moot Because the Conduct Will Recur
      When Defendant Repeals the Temporary Rule .................................................. 6

   B.   State Law Preempts Washington County's Recycling Certificate Scheme .............. 8

      1.   The Oregon Legislature Has Declared Recycling To be an Issue of
      Statewide Concern ........................................................................................... 8

      2.   Washington County's Recycling Franchise Certificate and Exemption Scheme
      Directly Conflicts with Oregon State Law's Limited Grant of Authority to Local
      Governments ................................................................................................... 9

         a.   Oregon Law Preempts Exercises of Home Rule Authority Where It Grants
         Limited Exclusionary Rights To Localities ................................................... 10

         b.   The State Legislature Has Granted Localities the Ability to Create
         Monopoly Franchises Only Where They Maximize Recycling ........................ 10

         c.   Washington County's Waste Management Scheme Conflicts With the
         State's Limited Grant of Authority to Create Monopoly Franchises ................ 11

IV.   THIS COURT SHOULD DENY THE MOTION TO DISMISS AS TO THE § 1983 CLAIMS ............ 13

   A.   *Monell* Does Not Bar § 1983 Liability Against the County ............................ 13

   B.   Defendant's Two Arguments Attacking Ridwell's Procedural Due
   Process Claim Fail .......................................................................................... 14

BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

1.   Ridwell Was Not Required to Exhaust State Level Remedies Before Bringing a Federal Action Because the GRAC Action Was an Official Action Authorized by the County ................................................................................................................ 14

2.   Ridwell Has Alleged a Property Interest Sufficient to Support Its Procedural Due Process Claim .......................................................................................................... 15

    a.   Ridwell's Right Not to Be Prevented Entirely from Doing Business In Washington County is Protected By Procedural Due Process Rights .................... 16

    b.   Ridwell's Business Goodwill is Protected by Procedural Due Process Rights16

    c.   Ridwell's Property Interest in Receiving The Staff-Recommended Exemption is Protected By Procedural Due Process Rights ......................................................... 17

C.   Ridwell has Adequately Alleged a Substantive Due Process Violation ................ 18

V.   CONCLUSION ....................................................................................................................... 19

I.    INTRODUCTION

Ridwell's Complaint against defendant Washington County properly alleges both state and federal claims against the County.  Despite the County's arguments to the contrary, this case presents live, justiciable issues.  Not surprisingly, the arguments made by Defendant in support of its motion do not challenge the central allegations of the complaint—that the County's code and its interpretation of that code results in prioritizing landfilling of waste over recycling in conflict with state law, that the County made it impossible for Ridwell to operate there unless it did so for free, and that driving Ridwell out of the County was the result of a corrupt and unlawful process.

Rather, the County relies upon non-meritorious arguments: 1) that it cannot be sued because four days after this lawsuit was filed, it passed a temporary rule allowing Ridwell to operate until the local monopoly-holding waste haulers can take over its business; 2); that it is free to second-guess the legislature's policy judgment in an area of statewide concern; and 3) that Ridwell's right to do business in the County, to have the County act consistently with state laws and local laws, and to protect its hard-earned business goodwill are inadequate interests to merit protection from government abuse.  Each of these arguments lacks merit.  This Court should accordingly deny Defendant's motion to dismiss.

II.    FACTUAL BACKGROUND

Beginning in 2021, Ridwell sought to operate its service picking up and recycling hard-to-recycle materials—e.g.,  batteries, plastic bags, and other materials not accepted in curbside recycling bins—in Washington County.  Complaint ¶ 34.

 Ridwell was advised by the County that it did not qualify for a certificate to operate its recycling services in the county—both because only full-service waste haulers that handle both recyclable and non-recyclable materials qualify for certificates,

BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

and because the county does not intend to add any additional franchises beyond the current franchise holders.  Complaint ¶ 38.  Accordingly, Ridwell followed the County's suggestion and applied for an exemption from the certificate requirement under a provision in the Washington County Code ("WCC").  Complaint ¶ 40.  The County's staff, citing sixteen separate factual findings, presented the County's Garbage and Recycling Advisory Committee (GRAC) with its recommendation to grant Ridwell's exemption request.  Complaint ¶ 41; *see also* RFJN Exh. 1, *June 30, 2021 Staff Report re: Ridwell, Inc. Exemption Request from the Requirement to Obtain a Certificate*.[1]

Unfortunately for Ridwell, the nine waste haulers with monopoly franchise agreements with the County ("waste haulers") were simultaneously lobbying the County.  Complaint ¶ 56.  Put simply, the waste haulers were suddenly asking to be awarded an expansion of their franchise monopolies that would eventually include the collection of reusable and hard-to-recycle materials and would exclude Ridwell from operating in the County, while in the meanwhile those materials would go to the landfill.[2]  The haulers' lobbyist, Ms. Vargas Duncan, penned a request to the County on behalf of the waste haulers and their trade association on April 16, 2021.  Complaint ¶¶ 55-57; *see also* RFJN Exh. 2, *April 16, 2021 Washington County Waste Hauler Association Letter re: Expanded Service Opportunity*.  Even more unfortunately for Ridwell, Ms. Vargas Duncan was *also* a voting member of the GRAC, and used her position to vociferously advocate against Ridwell and to vote to deny Ridwell the staff-

---

[1] Ridwell appropriately includes public records in this brief.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[2] This is particularly striking, as when Ridwell began operations in the County, the haulers were sending these materials to landfill.  Complaint ¶ 31.  The waste haulers' attempt to expand their services just months after Ridwell began collecting hard-to-recycle materials in the County instead appears to be a naked attempt to strangle potential competition.

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

recommended exemption.  Complaint ¶¶ 57-62.  And although both the County and Ms. Vargas Duncan's counsel were apprised of her clear conflict of interest, the County allowed the vote to take place without her recusal or disclosure of the conflict as was required by Oregon Law and the GRAC's own bylaws.  Complaint ¶¶ 58-62; *see also* RFJN Exh. 3, GRAC Bylaws, § 2.8[3].

Without making any factual findings, or pointing to any evidence contradicting the factual findings made by the County staff, the GRAC followed Ms. Vargas Duncan's recommendation and denied Ridwell's exemption.  Complaint ¶¶ 62-63.  At the time of the denial, the GRAC was improperly composed, with two voting industry members, including Ms. Vargas Duncan, instead of only the one authorized under WCC 8.04.065(C).  Both industry members voted to deny the exemption.  Under the County's interpretation of their code, the GRAC thus ended Ridwell's ability to operate at all in the County, unless it chose to operate for free.  Complaint ¶¶ 64, 68.

Faced with the County's threat of substantial daily fines, Ridwell stopped operations in Washington County for several weeks.  Complaint ¶ 10.  Ridwell filed the instant case on January 21, 2022.  Four days after the complaint in this case was filed, the County enacted a temporary rule allowing Ridwell to operate within the County, but only until the County could create a program run by the waste haulers on whose behalf Ms. Vargas Duncan had lobbied both inside and outside the GRAC.  The County's description of the temporary rule notes that "[u]pon development of additional program offerings this temporary rule will be repealed."  *See* RFJN Exh. 4, *January 25, 2022 Agenda re: Approve Temporary Amendments*, p. 1.

---

[3] "The [GRAC] members must declare potential conflicts of interest related to issues under consideration. Such members will abstain from voting on issues related to a conflict of interest, as determined by County Counsel."

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

III.    THIS COURT HAS JURISDICTION TO HEAR RIDWELL'S STATE LAW CLAIMS AND
        SHOULD DENY DEFENDANT'S MOTION TO DISMISS THOSE CLAIMS

        A.  The County's Temporary Ordinance Does Not Moot Ridwell's Claims

Defendant asserts that Ridwell's first and fourth causes of action are moot, and
that this Court should dismiss these claims under Federal Rule of Civil Procedure
12(b)(1).  Ridwell's complaint alleges that Washington County's Code, as well as its
current – and ongoing – interpretation of Washington County Code (WCC) 8.04.130 –
that it can use its state granted authority to award franchises as a bar to companies'
ability to collect recyclable materials not collected under the monopoly, resulting in
such materials being placed in the landfill—violates and is in conflict with state law.
Complaint ¶¶ 8, 9, 2, 71, 79.  These claims are not moot.

The voluntary passage of an explicitly *temporary* exemption allowing Ridwell to
operate is voluntary conduct intended to temporarily moot the instant litigation.
Indeed, the temporary rule was passed on an emergency basis four days *after* this action
was filed, and could be quickly rescinded.  As such, the county's interpretation of
§ 8.04.130 is likely to recur in the future.

        1.  Both Federal Case Law and State Law Statutory Standing Apply
            Where Defendant's Behavior Can Recur

Both the Ninth Circuit and the United States Supreme Court make clear that it is
the burden of the party asserting mootness—here, Washington County—to meet the
"formidable burden of showing that it is absolutely clear the allegedly wrongful
behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc*., 568 U.S.
85, 91 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S.
167, 190 (2000)).  This burden exists for good reason: "[o]therwise, a defendant could

engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.*

In the instant motion, Defendant cites *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) in support of its contention that Ridwell's claims for equitable relief are moot.  However, in that very case, the Ninth Circuit uses the standard quoted above, noting that defendant's burden in proving that a case has been mooted by a defendant's voluntary conduct is "stringent," and that "[a] case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *White v. Lee*, 227 F.3d at 1243 (emphasis added), quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *see also Pierce v. Ducey*, 965 F.3d 1085, 1090 (9th Cir. 2020).  In its motion, Defendant does not attempt to satisfy the burden established by the very Ninth Circuit case it cites in favor of mootness.

Likewise, Oregon law codifies the federal concept of justiciability in cases alleging a practice that is "capable of repetition yet evading review." To this end, Or. Rev. Stat. § 14.175 confers statutory standing to plaintiffs by "provid[ing] for an exception to mootness for cases of public importance that were capable of repetition yet evading review." *Pendleton School Dist. 16R v. State*, 345 Or. 596 (2009); *see also Couey v. Atkins*, 357 Or. 460 (2015).

Under Oregon law, statutory standing exists for claims such as Ridwell's, mirroring the federal jurisprudence for cases such as this:

> In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or

practice giving rise to the action no longer has a practical effect on the party if the court determines that:

(1) The party had standing to commence the action;

(2) The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

(3) The challenged policy or practice, or similar acts, are likely to evade judicial review in the future.

Or. Rev. Stat. Ann. § 14.175.

Thus, the federal case law dealing with claims that are capable of repetition should apply to Ridwell's preemption claim here, is also echoed by Oregon law's codification of the federal standard. Accordingly, this Court has jurisdiction to hear Ridwell's state law claims.

> ## 2. Ridwell's State Law Claims are Not Moot Because the Conduct Will Recur When Defendant Repeals the Temporary Rule

Here, four days *after* Ridwell filed suit, Washington County passed a temporary rule directly aimed at temporarily granting Ridwell the ability to continue operating in the county and to charge for its services. Motion at p. 4. This thinly veiled attempt at mooting Ridwell's state law cause of action and requests for injunctive and declaratory relief was a voluntary act by Defendant, and one that qualifies Ridwell for statutory standing under § 14.175. Indeed, as described below, the County's own summary of the temporary rule indicates that the rule will be repealed.

First, Defendant does not contest that Ridwell had standing to commence this action on January 21, 2022. Second, the policy and practice challenged by Ridwell in this action continues; the County does not (and cannot at this stage) assert that it has changed its interpretation of WCC § 8.04.130. Absent the "temporary" ordinance

passed in the shadow of this litigation, Ridwell would be entirely unable to operate in Washington County.  Third, Washington County's ordinance as currently interpreted would likely evade judicial review in the future, either because it will allow the waste haulers (as advocated by their lobbyist, GRAC voting member Vargas Duncan) monopoly power to fully take over disposal of hard-to-recycle materials in Washington County or to take over pickup of enough of those materials to make a service like Ridwell's financially impracticable.

Nor is it hypothetical that the temporary rule will be rescinded.  Rather, it is clear from Defendant's own public records that it intends to rescind the rule once the waste haulers begin accepting hard-to-recycle materials.  The county's agenda from January 25, 2022 describing the Temporary Rule explicitly notes Defendant's plans to rescind it:

> For community members to maintain access to expanded recycling collection services prior to the launch of a new program, a temporary administrative rule has been drafted. This temporary administrative rule authorizes the collection of recyclable materials for compensation, that are not currently included in the curbside recycling program, until sanitary service certificate holders are authorized to provide such collection services…. Upon development of additional program offerings this temporary rule will be repealed.

> RFJN Exh. 4, p. 1.

Further, nothing prevents Defendant from lifting the temporary rule established by Resolution and Order No. 22-15 even prior to the waste haulers taking over Ridwell's hard-to-recycle pickup if the state law cause of action is dismissed by this court as moot.  Importantly, when the temporary rule is rescinded, the dispute will remain.  This is because, even assuming Washington County implements a program for franchise holders to collect some hard-to-recycle materials, no proposal for that

PAGE 7-        RIDWELL'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

program includes all the materials Ridwell collects. When the temporary rule is rescinded, therefore, Ridwell will once again be prohibited under WCC 8.04.130(c) from collecting even those items that the waste haulers' program excludes, leaving those items to go to landfill. Thus, under federal law allowing courts to hear cases "capable of repetition yet evading review" as well as under state law, a live controversy exists between Ridwell and the County.

### B. State Law Preempts Washington County's Recycling Certificate Scheme

Defendant's motion contends that Ridwell's state law claim should be dismissed because Oregon state law does not explicitly preempt local regulation of recycling and waste collection. Motion at p. 5. This argument is both misguided and misapprehends Ridwell's complaint.

### 1. The Oregon Legislature Has Declared Recycling To be an Issue of Statewide Concern

In support of its argument that Washington County has home rule authority to exclude Ridwell, Defendant cites Article VI, section 10 of the state constitution. Motion at 5. That provision gives "home rule" counties authority over "matters of county concern." *Buchanan v. Wood*, 79 Or. App. 722, 727 (1986); *see also Caffey v. Lane County*, 298 Or. 183, 187 (1984). Oregon courts, however, have noted that "[l]egislative enactments … remain preeminent in substantive matters of statewide concern." *Buchanan*, 79 Or. App. at 727; *see also Pacific N.W. Bell v. Multnomah Co.*, 68 Or. App. 375, 378, rev. den. 297 Or. 547 (1984). And here, as discussed below, the legislature has repeatedly designated recycling to be an issue of statewide concern, thereby displacing any municipal ordinance that conflicts with its goals.

Defendant's motion spends several pages indicating that the state has not explicitly preempted local regulation. Curiously, however, the motion entirely omits

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

any analysis of the state legislature's clear statement that "[t]he Legislative Assembly finds that providing for collection service including but not limited to the collection of recyclable material as part of the opportunity to recycle is a matter of *statewide concern*." Or. Rev. Stat. Ann. § 459A.085 (emphasis added).  The state legislature also has pronounced that "[t]he planning, development and operation of recycling programs is a matter of *statewide concern*." Or. Rev. Stat. Ann. § 459.015(1)(a) (emphasis added).

These legislative pronouncements set a baseline presumption that local enactments undermining the state's policy goals are preempted by the state's authority to act in areas of statewide concern.  Such preemption occurs in the absence of any explicit declaration of field preemption, even where the state has granted localities limited authority to act on the state's behalf.  The legislature's intent in regulating recycling consistently includes clear language that recycling policy is a statewide concern. Any contention that home rule supersedes this statewide concern is meritless.

   2.   Washington County's Recycling Franchise Certificate and Exemption Scheme Directly Conflicts with Oregon State Law's Limited Grant of Authority to Local Governments

Defendant focuses its arguments solely on asserting the lack of field preemption, but Ridwell does not rely on field preemption. Rather, Ridwell's central contention is that Washington County's certificate and exemption scheme *conflicts* with state law by granting monopoly franchise power to *prevent* maximum recycling opportunity for its residents.  Instead, in direct conflict with state law, Defendant's scheme results in prioritizing landfilling over reuse and recycling. Yet Defendant's motion does not engage in any conflict preemption analysis.

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

a.  *Oregon Law Preempts Exercises of Home Rule Authority Where It Grants Limited Exclusionary Rights To Localities*

Under Oregon law, local ordinances or other enactments may be preempted where the ordinance conflicts with state law.  "The test for whether a state law preempts a local civil or criminal ordinance is whether the local rule is incompatible with the legislative policy." *State v. Tyler*, 168 Or. App. 600, 604. "[W]hen a local enactment is found incompatible with a state law in an area of substantive policy, the state law will displace the local rule." *LaGrande/Astoria*, 281 Or. at 149; *see also Springfield Util. Bd. ex rel. City of Springfield v. Emerald People's Util. Dist.*, 191 Or. App. 536, 541 (2004), *aff'd sub nom. Springfield Util. Bd. v. Emerald People's Util. Dist.*, 339 Or. 631 (2005).

In *Springfield Utility Board,* the City of Springfield wished to exclude a public utility district from its streets, claiming that exclusion to be appropriate under its home rule authority. *Springfield*, 191 Or. App. at 550-52.  The *Springfield* court disagreed, holding that because a state statute provided "the sole authority for a city to exclude a public utility from its streets and other property" the municipality could not exclude a public utility district for reasons beyond those articulated by the state statute.  *Id.* Notably, the state statute at issue in *Springfield* does not contain explicit preemption language; rather, the court found the statute's grant of authority for municipal regulation to limit the use of home rule powers beyond the statute's bounds.

b.  *The State Legislature Has Granted Localities the Ability to Create Monopoly Franchises Only Where They Maximize Recycling*

Just as in *Springfield*, here there is no doubt that the Oregon legislature's grant of authority to counties seeking to create franchise monopolies for waste management was a limited one. When the state legislature enabled Oregon localities like Washington County to grant franchise monopolies for waste management—even though such

BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

monopolies would "displace competition"—it could only do so where the county acts "for and on behalf of the State of Oregon to carry out the purposes of ORS 459.015 and ORS 459A." Or. Rev. Stat. Ann. § 459A.085(3), (4).

The clearly articulated legislative policy underlying Oregon state law is to maximize reuse and recycling and to minimize waste going to landfill. These laws set forth the statewide priorities for recycling, requiring the state (and, per Or. Rev. Stat. Ann. § 459A.085, localities) to prioritize recycling over disposal of solid waste, which should only be landfilled when it "cannot be reused, recycled, composted" or otherwise recovered. Or. Rev. Stat. Ann. § 459.015(2)(c).

  c. *Washington County's Waste Management Scheme Conflicts With the State's Limited Grant of Authority to Create Monopoly Franchises*

Washington County's scheme, which it interprets to allow it to entirely exclude companies like Ridwell from recycling materials that would otherwise go to landfill unless they renounce their ability to charge for their service, is counter to the state law that grants it the ability to grant franchises in the first place. Oregon law, which normally disfavors displacement of competition, only allows localities to establish franchise monopolies to the extent it furthers the goals enumerated in Or. Rev. Stat. Ann. § 459.015. As the Oregon Court of Appeals has noted:

> In interpreting franchises, if the terms of the franchise are doubtful, they are to be construed strictly against the grantee and liberally in favor of the public. Therefore, no rights are conferred on a grantee by implication, and that which has not been expressly granted has been withheld.

*Pride Disposal Co. v. Valet Waste, LLC*, 298 Or. App. 751, 766 (2019) (citations and quotation marks omitted; *see also City of Eugene v. Comcast of Oregon II, Inc.*, 359 Or. 528, 542 (2016).

PAGE 11-  RIDWELL'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Here, as Ridwell alleges in its complaint, the County instead adopted a scheme not to further the goals of maximizing recycling (or even to further health and safety goals) but to ensure that waste hauling companies already granted monopoly franchise certificates could exercise a de facto veto of companies that they perceived as competition for services *they did not offer*.  The result was that otherwise recyclable materials would go to the landfill as a means of protecting franchise certificate holders. Complaint ¶ 31 (the Washington County website says that the "best option" for disposal of plastic film (a material Ridwell collects for recycling) is to "[p]ut [it] in the garbage.") An open conflict of interest existed because the County allowed GRAC member Vargas Duncan to simultaneously lobby County staff to expand the waste haulers' monopoly, while she also advocated and voted against Ridwell's exemption as a member of the GRAC.  Such an unchecked and open conflict gives the lie to any assertion that the denial of Ridwell's exemption was based upon the state's limited delegation of its authority to counties to engage in waste services regulation.

Further, any assertion that the GRAC's denial of Ridwell's exemption from the certificate process was based upon either health and safety or equity concerns is belied both by the County's consistent position that Ridwell could continue to operate its services *for free* and that Ridwell has been granted the temporary ability to continue its services in Washington County until such services are taken over by the Waste Haulers. Complaint ¶ 68; *see also* RFJN, Exh. 4.  For the foregoing reasons, this Court should deny the County's motion to dismiss Ridwell's state law claims.   Washington County cannot remain consistent with state law while barring Ridwell both from operating under a franchise agreement and from operating without one.

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

IV.    THIS COURT SHOULD DENY THE MOTION TO DISMISS AS TO THE § 1983 CLAIMS

A.  *Monell* Does Not Bar § 1983 Liability Against the County

The County's argument that *Monell* bars direct liability against a public entity unless the pleadings specify a "policy or practice" also misses the mark.  As *Monell* itself notes—and courts in this district have directly confirmed— "local governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Thornton v. City of St. Helens*, 231 F. Supp. 2d 1019, 1025–26 (D. Or. 2002) (citing *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690 (1978)).

The United States Supreme Court has consistently held for nearly 50 years that municipalities are not afforded immunity from their official legislative actions.  Indeed, municipalities may be sued directly under § 1983 for constitutional violations where such violations arise from an enactment, whether enacted by their legislative bodies or by boards or by commissions such as the GRAC. *See, e.g.*, *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 252 (1981) (city council can be directly sued for canceling a license permitting a concert following a dispute over the performance's content); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988) (where a commission's decision is not reviewable by a higher legislative body, it constitutes an official legislative action that may subject a public entity to direct § 1983 liability).   In *Praprotnik*, the Supreme Court noted that where a commission enacted a policy that was non-reviewable by the city's mayor or legislative body, that final policy could subject the city directly to liability under § 1983 if that act had violated the Constitution.

Here, the GRAC's baseless denial of Ridwell's exemption –after the County staff had recommended granting the exemption—was not reviewed by the County Board of

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

Commissioners.  Rather, the County code implies that only exemptions that are *granted* are reviewed by the Board.  WCC 8.04.010.  In its motion, Washington County admits this to be the case—wrongly stating (*see infra*) that Ridwell should have filed a state-court writ action rather than initiating this federal suit.  Accordingly, Ridwell's complaint, in pleading that Washington County's GRAC took a final action on the County's behalf in denying the exemption, satisfies *Monell* and establishes a direct section 1983 cause of action against the County itself.

      B.   Defendant's Two Arguments Attacking Ridwell's Procedural Due Process Claim Fail

Defendant's motion relies on only two theories to dismiss Ridwell's procedural due process claim, and otherwise concedes that Ridwell's claims are valid. First, Defendant contends that Ridwell was required to exhaust state remedies before bringing federal suit, citing *Parratt v. Taylor*, 451 U.S. 527 (1981).  Second, Defendant contends that Ridwell has failed to sufficiently allege a property right subject to federal procedural due process requirements. Both arguments lack merit.

      1.   Ridwell Was Not Required to Exhaust State Level Remedies Before Bringing a Federal Action Because the GRAC Action Was an Official Action Authorized by the County

There is no requirement that Ridwell exhaust state remedies before bringing its due process claims before this Court—*Parratt* does not hold otherwise.  *Parratt* only applies where the government's conduct in depriving a plaintiff of liberty or property is "random and unauthorized." *See Parratt*, 451 U.S. at 535–44 (1981); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  As the United States Supreme Court has repeatedly held, an action is only random and unauthorized where the conduct was unforeseeable, was "unauthorized and executed in violation of state procedure," and where "pre-

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

deprivation procedures would have been impracticable under the circumstances." *Zinermon v. Burch*, 494 U.S. 113, 136–38 (1990).  If the deprivation is deemed random and unauthorized, "availability of an adequate post-deprivation remedy precludes relief because it affords constitutionally sufficient procedural due process." *Edwards v. Staton*, No. 3:14-CV-00531-AC, 2015 WL 350635, at \*4 (D. Or. Jan. 26, 2015).

Ridwell does not allege facts that would require the application of *Parratt*. Indeed, the complaint alleges that Ridwell was deprived of its property and business goodwill as a result of an *official, planned* action of a government body, not a "random and unauthorized" deprivation caused by a rogue actor.  Indeed, the Ninth Circuit has held that where a body of government officials act under the authority of procedures, regulations, or statutes designed to control their actions, "the considerations underlying *Parratt* are simply inapplicable." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1482 (9th Cir.), *opinion amended on denial of reh'g*, 882 F.2d 1398 (9th Cir. 1989) (quoting *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir.1985) (en banc)). Accordingly, *Parratt* does not apply here; Ridwell may bring a section 1983 claim for due process against Defendant without first bringing a state court action.

> 2.  Ridwell Has Alleged a Property Interest Sufficient to Support Its Procedural Due Process Claim

Defendant further asserts that Ridwell's complaint fails to allege a property interest sufficient to support its procedural due process claim.[4]  Not so.  "A threshold

---

[4] Washington County does not challenge that Ridwell adequately pled that the process by which Ridwell was denied its exemption fulfilled the procedural requirements of due process. Specifically, the County does not challenge the complaint's assertions that the GRAC was improperly constituted, failed to fulfill its duties in the manner prescribed by local law, or that its voting members acted under a disqualifying conflict

BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir.1994); *see also Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999) (finding law that completely barred chosen business practice subjected invoked procedural due process rights). Ridwell's complaint explicitly alleges that the GRAC's actions impacted several constitutionally protected interests.

> a. *Ridwell's Right Not to Be Prevented Entirely from Doing Business In Washington County is Protected By Procedural Due Process Rights*

First, the complaint alleges that GRAC's improper actions deprived Ridwell entirely of its ability to do business in Washington County; this is a protected right of which it may not be deprived without due process. *See Dittman*, 191 F.3d at 1029-30; *see also Speed's Auto Servs. Grp., Inc. v. City of Portland*, No. 3:12-CV-738-AC, 2014 WL 2809825, at *5 (D. Or. June 20, 2014).

> b. *Ridwell's Business Goodwill is Protected by Procedural Due Process Rights*

Second, Ridwell alleges that the GRAC's actions unlawfully deprived it of its business goodwill. Complaint at ¶¶ 84, 87. Federal courts "look to state law to determine if business goodwill is properly characterized a property interest." *Wedges/Ledges of California, Inc.*, 24 F.3d at 65. Oregon courts recognize business goodwill as a protectable property interest. *Westwood v. City of Hermiston,* 787 F.Supp.2d 1174 (2011). In *Westwood,* the court acknowledged that under Oregon law, a value exists over and above the value of a business's assets, which is referred to

---

of interest. Defendants have therefore waived these arguments for purposes of this motion.

as "goodwill" value. *Id.* at 1197. Accordingly, in federal cases arising in Oregon, business goodwill has repeatedly been held to be a property interest protected that may give rise to a due process claim. *Id.* at 1197; *see also Speed's Auto Servs. Grp., Inc.*, 2014 WL 2809825, at *9 ("[business goodwill] is a property interest entitled to protection; the owner cannot be deprived of it without due process"). To the extent that Washington County disputes the factual support for whether Ridwell has lost business goodwill, such a challenge is appropriate for a summary judgment motion—not for the instant motion, where Ridwell's allegations are to be taken as true.

> c. *Ridwell's Property Interest in Receiving The Staff-Recommended Exemption is Protected By Procedural Due Process Rights*

Finally, Ridwell also has sufficiently alleged a property interest in receiving the exemption that would have allowed it to operate in Washington County. Whether the code creates a property interest in a franchise certificate or an exemption from requiring a certificate turns on whether there is a significant substantive restriction on the decision to issue one. *See Wedges/Ledges of Cal.*, 24 F.3d at 63.

The Washington County code provides that certificates "shall not be required of" practices "exempted by the board after receipt of a recommendation of the advisory committee *on the basis of findings* made after public hearing that the same is not necessary to the implementation of the county or a regional solid waste management plan." WCC 8.04.130 (emphasis added). Here, however, the County staff recommended granting Ridwell an exemption from the certificate requirement. As a part of this recommendation, the County's staff made sixteen separate factual findings and concluded that "[t]he practice of collecting items not included in the Administrative Rules for recycling or reuse for compensation is not necessary to the implementation of the Regional Waste Plan and may be exempted from the requirement of obtaining a

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

certificate." RFJN, Exh. 1 at p. 4. These findings were necessary to the staff's analysis under WCC 8.04.130, as a recommendation with such findings is required by the county code.  This staff recommendation created an entitlement to the exemption, so long as its factual findings were not contradicted or overturned by the GRAC. *See, e.g.*, *Holman v. City of Warrenton*, 242 F. Supp. 2d 791, 805 (D. Or. 2002).

The GRAC—unlawfully composed with excess hauler representation as well as a voting member with a conflict of interest[5]—discarded the County staff findings without making any written findings (or any factual findings at all) supporting that determination. While the GRAC may deny a certificate exemption, it may not do so without factual support for its determination that such an exemption would interfere with or otherwise harm the county's waste management plan.  Accordingly, the GRAC lacked discretion to unilaterally deny Ridwell a certificate exemption recommended by the City staff and in any event lacked any factual basis for doing so.

C.  Ridwell has Adequately Alleged a Substantive Due Process Violation

Defendant's argument that Ridwell fails to allege a substantive due process right likewise fails.  To sustain a claim for violation of substantive due process, government action must: (1) interfere "with rights implicit in the concept of ordered liberty," *United States v. Salerno,* 481 U.S. 739, 746 (internal quotation marks omitted); (2) "shock [ ] the conscience," *Rochin v. California,* 342 U.S. 165, 172 (1952); <u>*or*</u> (3) be "arbitrary in the constitutional sense," *Collins v. City of Harker Heights,* 503 U.S. 115, 129 (1992).  Any one

---

[5] As discussed above, a member of the GRAC voting on Ridwell's exemption was both acting beyond her term and had also previously advocated for the waste haulers' association to be the sole provider of the services offered by Ridwell.

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

of these three kinds of government action can, if present, support a claim for violation of substantive due process rights.[6]

Defendant's motion to dismiss merely focuses on whether Ridwell has made a threshold showing of a liberty or property interest protected by the Constitution. But as described above, its protected liberty and property rights were infringed by the unlawful actions of the GRAC.  *See* supra section B2.  Such interference with established rights is sufficient to support Ridwell's substantive due process claims.  Though Ridwell's complaint also alleges government behavior that both shocks the conscience and that is constitutionally arbitrary (Complaint at ¶¶ 42, 54-63, 72, 92-94) Washington County does not challenge Ridwell's complaint as insufficient as to those allegations.

V.    CONCLUSION

For the foregoing reasons, this Court should deny Defendant's motion to dismiss.  In the alternative, the Court should allow plaintiff Ridwell, Inc. to amend its complaint to conform with the law.

Dated: April 8, 2022.

_s/ Darin M. Sands_
DARIN M. SANDS, OSB NO. 106624
ERIN BERNSTEIN, ADMITTED PRO HAC VICE
GINA ELLIOTT, ADMITTED PRO HAC VICE

---

[6] Ridwell need not have exhausted state remedies for the substantive due process claim prior to bringing suit. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1233 (9th Cir. 1994).

**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201