IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RIDWELL, INC.,                                             Case No. 3:22-cv-110-JR

             Plaintiff,                        FINDINGS & RECOMMENDATION

    v.

WASHINGTON COUNTY, OREGON,

             Defendant.

_____

RUSSO, Magistrate Judge:

Plaintiff, Ridwell, Inc., brings this suit alleging defendant Washington County, Orgon, violated state law and its federal constitutional rights when it forced plaintiff to cease its operations collecting materials for recycling within the County.  Defendant moves to dismiss this lawsuit. For the reasons stated below, defendant's motion should be granted in part and denied in part.

ALLEGATIONS

Plaintiff collects materials from its members for reuse and recycling that are otherwise collected by municipal waste haulers for deposit into a landfill.  Complaint (ECF 1) at ¶ 1. Defendant provides municipal waste services throughout unincorporated parts of Washington County through exclusive franchise agreements with nine waste hauling companies.  Id. at ¶ 2.

Plaintiff alleges defendant, at the beginning of 2022, improperly barred it from collecting recycling materials from its 1600 Washington County members.  Accordingly, plaintiff asserts it

Page 1 – FINDINGS & RECOMMENDATION

was forced to cease collecting difficult to recycle materials that the County's waste haulers did not accept in the County's existing curbside recycling bins.  Id. at ¶¶ 3-4.  Plaintiff alleges it was barred from collecting such materials because it charges a fee which threatens the franchise waste hauler's economic interests.  Id. at ¶ 4.

Although Oregon law authorizes counties to displace competition and grant franchise agreements to waste haulers, plaintiff asserts the law does not authorize restriction of public access to recycling services that are not offered by the franchisees.  Id. at ¶ 5-6.

Plaintiff alleges Oregon's Opportunity to Recycle Act provides that in order to conserve energy and natural resources, materials management should follow a hierarchy preferring reuse and recycling of waste materials over depositing those materials into a landfill.  Id. at ¶ 18.  Plaintiff further alleges that the franchise monopoly power must be construed narrowly and cannot be extended in such a way as to undermine the public interest.  Id.at ¶ 21.  Specifically, plaintiff alleges:

> The power to grant franchises is also limited in that municipalities must "act[] for and on behalf of the State of Oregon to carry out" the purposes of ORS 459.015, ORS 459A.085(4), which includes:
>
> > 1) Prioritizing methods of waste management that seek to first reuse or recycle materials, before resorting to disposal in a landfill. ORS 459.015(2).
> >
> > 2) Extending the useful life of solid waste disposal sites by encouraging waste prevention and the recycling and reuse of materials, and by requiring solid waste to undergo volume reduction through recycling and reuse measures to the maximum extent feasible before disposal. ORS 459.015(1)(d).

Id. at ¶ 22.

Plaintiff asserts its members pay a monthly fee for the placement of a bin on their property to deposit materials such as batteries, lightbulbs, plastic film, plastic clamshells, clothing and shoes, and Styrofoam that neighborhood trash pickup will not accept in the curbside recycling

program.  Id. at ¶¶ 23-26.  Plaintiff further asserts that for municipal recycling collectors, up to 25% of materials collected in the recycling bin end up in landfills due to commingling with different recyclable materials and with non-recyclable or hard to recycle materials.  Id. at ¶ 29.

Plaintiff contends there "is no overlap or competition between the collection service provided by the Waste Haulers and Ridwell's waste reduction service. Ridwell only collects materials that are not accepted in curbside recycling bins provided by Waste Haulers with franchise licenses." Id. at ¶ 32.

Under Washington County Code § 8.04.120, it is "unlawful for any person to collect, store, transport or dispose of any waste or solid waste in the unincorporated areas of the County for compensation" without a franchise certificate.  Complaint (ECF 1) at ¶ 36.  Plaintiff alleges defendant found plaintiff in violation of this code even though recyclable material is not "waste." Id. at ¶ 37.  Plaintiff further asserts it is unable to obtain a franchise certificate because all certificates have already been allocated.  Id at ¶ 38. Moreover, even if such a certificate was available to plaintiff, it is not equipped to collect all of the putrescible solid waste and the designated recyclable materials required by the certificate.  In addition, the required set rates do not account for the additional expense necessitated by collecting the hard to recycle materials.  Id.

Washington County Code contains a process for exempting certain activities from the certificate requirement on the basis of findings made after a public hearing. WCC § 8.04.130(c). Plaintiff's request for exemption was denied.  Plaintiff alleges the exemption denial by the Garbage and Recycling Advisory Committee (GRAC) was flawed because:[1]

---

[1] Plaintiff alleges County staff found, based on 16 distinct factual findings, that Ridwell's practice was "not necessary to the implementation of the Regional Waste Plan and may be exempted from the requirement of obtaining a certificate", and thus met the requirements for an exemption under WCC § 8.04.130(c). Complaint (ECF 1) at ¶ 42.

Page 3 – FINDINGS & RECOMMENDATION

1. The GRAC violated local law by including three voting representatives of the self-interested Waste Haulers (a cartel hostile to Ridwell) on the committee rather than the one representative allowed by local law.

2. Second, one voting industry member's term on the GRAC had expired months before she voted against allowing Ridwell to operate.

3. Finally, this same member's counsel, as well as the County Counsel, had noted that she also had potential conflict of interest. However, she failed to disclose that conflict, despite promises by her counsel that she would disclose her conflict before any public hearings on Ridwell. After failing to disclose her potential conflict, the termed-out member instead actively led the opposition to Ridwell's request in multiple Committee meetings and eventually voted in opposition to granting the exemption.

Complaint (ECF 1) at ¶ 42.

Plaintiff alleges that because the GRAC did not make a favorable recommendation, the County, through its Board of Commissioners, was not given an opportunity to review the exemption or overrule the GRAC. Id. at ¶ 53.

Because plaintiff was unable to obtain the exemption, defendant instructed plaintiff to cease operations by January 15, 2022, and threatened prosecution if it failed to do so. Id. at ¶ 64-67. Defendant, nonetheless, informed plaintiff that it may continue operations so long as it provided its services at no cost. Plaintiff contends defendant's actions were due to a perceived economic threat to its certificated waste haulers. Id. at ¶¶ 68-71.

Plaintiff asserts the following claims: preemption (defendant's interpretation of WCC § 8.04.120 is incompatible with Or. Rev. Stat. 459A.085); violation of procedural and substantive due process under 42 U.S.C. § 1983; and a declaration that it is allowed to resume operations in Washington County as well as an injunction prohibiting defendant from citing it for continued operations. Plaintiff also seeks damages. Defendant moves to dismiss this action asserting the claims for declaratory and injunctive relief do not present a justiciable controversy, and plaintiff fails to state a claim for relief with respect to all four claims.

In responding to the motion to dismiss, plaintiff asks the Court to take judicial notice of (1) June 30, 2021 Washington County Staff Report on the Ridwell exemption request; (2) April 16, 2021 letter to Washington County from the Washington County Hauler Association as an exhibit related to the agenda for June 10, 2021 Garbage and Recycling Advisory Committee Meeting; (3) Garbage and Recycling Advisory Committee's Bylaws; and (4) January 25, 2022 Agenda Item re: Temporary Amendments to Solid Waste and Recycling Administrative Rules.  Generally, a court may not consider materials not included in the pleadings in deciding a Rule 12 motion.  Fed. R. Civ. P. 12(d).  Nonetheless the court "may take judicial notice of matters of public record" and consider them without converting a Rule 12 motion into one for summary judgment.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted). Judicial notice is appropriate for records and "reports of administrative bodies." Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir. 1954).  Courts may also take judicial notice of organizational bylaws.  Rhodes v. Sutter Health, 2012 WL 662462, at *3 (E.D. Cal. Feb. 28, 2012) (taking judicial notice of an entity's bylaws because judicial notice of facts not subject to reasonable dispute is appropriate where they are either generally known within the territorial jurisdiction of the trial court or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.).   In addition, documents available on government websites are appropriate subjects for judicial notice.  See Dudum v. Arntz, 640 F.3d 1098, 1101 n.6, 1104 n.11 & n.13 (9th Cir. 2011); Daniels–Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir.2010) (taking judicial notice of official information posted on a governmental website, the accuracy of which was undisputed).  Defendant has not opposed the motion and also asks the Court to consider matters beyond the complaint including the January 25, 2022 temporary amendments to the Solid Waste and Recycling Administrative Rules.  Therefore, plaintiff's motion

to take judicial notice (ECF 18) is granted.  Accordingly, the Court takes judicial notice of the

documents which may be found at: (1)

https://www.co.washington.or.us/HHS/SWR/Resources/upload/Staff-Report_Ridwell-

Exemption-Request.pdf); (2)

https://www.co.washington.or.us/HHS/SWR/Resources/upload/Exhibit-B-April-16-2021-

Washignton-County-Hauler-Association-Letter.pdf); (3)

https://www.co.washington.or.us/HHS/SWR/Resources/upload/GRAC-Bylaws_adopted-4-20-

21.pdf); and (4)

https://washingtoncounty.civicweb.net/document/23221/Approve%20Temporary%20Amendmen

ts%20to%20Solid%20Waste%20and.pdf?handle=BAFA1971260C478C975DE9BE249A2414).

DISCUSSION

A.    Justiciable Controversy

Plaintiff alleges WCC § 8.04.120, as interpreted by defendant (banning contracting with

residents to pick up materials for recycling that franchisees do not recycle), is preempted by state

law.  Accordingly, plaintiff seeks a declaration it is allowed to resume its operations in Washington

County so long as it only collects materials that are not collected for recycling by franchise haulers

throughout the County and an injunction prohibiting defendant from citing Ridwell for continuing

to operate in the County.  Defendant contends the Court lacks subject matter jurisdiction over the

claims for declaratory and injunctive relief.

On January 25, 2022, the Washington County Board of Commissioners adopted Resolution

and Order No. 22-15 approving temporary amendments to the Solid Waste and Recycling

Administrative Rules:

> Notwithstanding any other provision in these rules, a person may temporarily
> collect source separated recyclable material from residential generators for a fee

> that is not designated or allowed to be collected for recycling by a certificate holder
> by these rules so long as the material is appropriately recycled or reused. The person
> must cease collection if a certificate holder is authorized to collect any such
> recyclable materials.

Resolution and Order No. 22-15 (attached to the Declaration of Thomas Carr at Ex A (ECF <u>13-1</u>,

p. 35-36)).   The temporary rule anticipates a new program expanding recycling and that rule will

terminate upon authorization of the new program:

> For community members to maintain access to expanded recycling collection
> services prior to the launch of a new program, a temporary administrative rule has
> been drafted. This temporary administrative rule authorizes the collection of
> recyclable materials for compensation, that are not currently included in the
> curbside recycling program, until sanitary service certificate holders are authorized
> to provide such collection services. This temporary rule will allow a person, other
> than current certificate holders, to temporarily collect source separated recyclable
> material from residential generators if the materials are appropriately recycled or
> reused. The person must cease collection if a certificate holder is authorized to
> collect any such recyclable material. County staff will continue to work with the
> garbage and recycling collection service providers to develop additional recycling
> collection program offerings. Upon development of additional program offerings
> this temporary rule will be repealed.

<u>Id.</u> at p. 1.

The temporary rule renders moot plaintiff's request for declaratory and injunctive relief.

Nonetheless, plaintiff asserts "[a]bsent the 'temporary' ordinance passed in the shadow of this

litigation, Ridwell would be entirely unable to operate in Washington County." Response (ECF

<u>17</u>) at pp. 6-7.[2]  Accordingly, plaintiff argues the claim is not moot because the conduct will recur.

A case might become moot if subsequent events make it absolutely clear that the allegedly

wrongful behavior could not reasonably be expected to recur.   <u>United States v. Concentrated</u>

<u>Phosphate Export Ass'n</u>, 393 U.S. 199, 203 (1968). The substantial burden of persuading the Court

---

[2] The Court cannot determine the motive behind the temporary rule, the timing of the rule, nor any future rule that
may succeed it on a motion to dismiss.  Defendant, for its part, asserts that plaintiff was well aware of the proposal
for the rule before it filed this litigation and argues plaintiff "raced to the courthouse to file the Complaint before the
Board adopted the rule."  Reply (ECF <u>20</u>) at p. 7, fn. 3.

Page 7 – FINDINGS & RECOMMENDATION

that the challenged conduct cannot reasonably be expected to begin again lies with the party asserting mootness. Id.  Plaintiff argues defendant has not met its burden because the claims are capable of repetition.

First, the Court notes that temporary actions that accommodate the injunctive relief requested do not generally moot an otherwise valid claim for such relief.  See City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (a citywide moratorium on police chokeholds—an action that surely diminished the already slim likelihood that any particular individual would be choked by police—would not have mooted an otherwise valid claim for injunctive relief, because the moratorium by its terms was not permanent).  Here, however, the temporary rule anticipates a permanent rule authorizing collection of recyclables not currently gathered by franchisees and the temporary rule will remain in place until that time.

When a case becomes moot, an exception to lack of an actual case or controversy is made "only in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  Hamamoto v. Ige, 881 F.3d 719, 722 (9th Cir. 2018) (internal citations and quotations omitted).  For a controversy to be too short to be fully litigated it must be of inherently limited duration.  Protectmarriage.com-Yes on 8 v. Bowen, 752 F.3d 827, 836 (9th Cir. 2014).

The challenged rule is not of "inherently limited" duration.  Plaintiff also challenges the process by which its exemption was denied.  As noted in footnote 2, supra, the motivation behind the temporary rule and whatever the new rule will be is beyond the scope of this motion.  Thus, the Court would have to speculate that the new program (following the temporary rule) would still result in a lack of collection of all recyclables by franchisees and thus necessitate further requests

for exemption that may allegedly violate state law and plaintiff's procedural rights. Even if this exemption process were to play out again, it is certainly not clear it will result in a repeated denial of plaintiff's rights. Such a complex "repetition" of violation of plaintiff's rights is not inherently limited in duration as such a finding would assume repeal of the temporary rule with an inadequate new program in its place, along with a similar exemption denial followed by another temporary rule allowing plaintiff to operate. Thus, the exemption denial is also not inherently too short to be litigated. For much the same reason, the Court cannot rationally find that plaintiff can reasonably be expected to be subjected again to the same action. Accordingly, the Court should find plaintiff's request for declaratory and injunctive relief moot and dismiss those claims.

B.    Preemption Claims

In its first claim for relief, plaintiff asserts that WCC § 8.04.120 requires that recyclable materials not collected by franchise waste haulers be diverted to the landfill in contravention of the State of Oregon's law granting cities and counties the power to issue franchise certificates that grant monopoly powers. Specifically, plaintiff alleges use of the franchise power to perpetuate a statutory scheme to divert to the landfill materials which residents are willing to pay to have recycled violates Or. Rev. Stat. § 459A.085 by prohibiting activities, to be performed by others, not included in the franchisee's services. In its fourth claim for relief, plaintiff seeks a declaration that WCC § 8.04.120 is preempted by Or. Rev. Stat. § 459A.085.

Defendant moves to dismiss these claims contending it has the authority to regulate recycling in the manner it has chosen by virtue of the delegation of waste management to defendant by the State Legislature.

In the interest of the public health, safety and welfare, in order to allow all entities in Oregon to produce and use materials responsibly, conserve resources and protect the environment and in order to allow all people of Oregon to live well, it

is the policy of the State of Oregon to establish a comprehensive statewide program
for materials management that will:

….

> (d) **Clearly express the Legislative Assembly's previous
> delegation of authority to cities and counties for collection
> service franchising and regulation** and the extension of that
> authority under the provisions of this section and ORS 459.125 and
> 459A.005 to 459A.085.
>
> (e) **Retain primary responsibility for management of
> adequate solid waste management programs with cities,
> counties or metropolitan service districts**, reserving to the state
> those functions necessary to ensure effective programs, cooperation
> among cities, counties or metropolitan service districts and
> coordination of solid waste management programs throughout the
> state.

Or. Rev. Stat. § 459.015 (2)(d-e) (emphasis added).

Plaintiff argues the Legislature has designated recycling to be an issue of statewide
concern, thereby displacing any local ordinance that conflicts with this goal.

"The Legislative Assembly finds that providing for collection service including but not
limited to the collection of recyclable material as part of the opportunity to recycle is a matter of
statewide concern." Or. Rev. Stat. § 459A.085(1). "The planning, development and operation of
recycling programs is a matter of statewide concern." Or. Rev. Stat. § 459.015(1)(a). While "It is
the intent of the Legislative Assembly that a … county may displace competition with a system of
regulated collection service by issuing franchises which may be exclusive if service areas are
allocated," Or. Rev. Stat. § 459A.085(3), in carrying out that authority, a county acts on behalf of
the State to carry out the purposes of section 459.015. Accordingly, plaintiff argues defendant's
use of WCC § 8.04.120 to prevent non-franchisees from engaging in paid operations to
"maximize" recycling opportunity is in conflict with the statute delegating responsibility for waste
management.

"The test for whether a state law preempts a local civil or criminal ordinance is whether the local rule is incompatible with the legislative policy, either because the two cannot operate concurrently or because the legislature intended the state law to be exclusive." State v. Tyler, 168 Or. App. 600, 604, 7 P.3d 624, 627 (2000).  Here, plaintiff asserts it cannot be excluded from its recycling operation for reasons beyond those articulated by the authorizing statute.  In other words, plaintiff contends that by refusing to grant plaintiff an exemption to operate its recycling operation that fills in where franchisees refuse to recycle hard to recycle materials, it is in conflict with the State's intent to prioritize recycling.  See Springfield Util. Bd. ex rel. City of Springfield v. Emerald People's Util. Dist., 191 Or. App. 536, 551, 84 P.3d 167, 175 (2004). ("We conclude that ORS 221.420 provides the sole authority for a city to exclude a public utility from its streets and other property. Because a PUD is not a public utility for that purpose, that authority does not extend to PUDs. Thus, the board's action purporting to exclude Emerald from territory that the PUC had allocated to it was without effect.").

A careful reading of plaintiff's argument reveals that it does not take issue with WCC § 8.04.120 per se, rather it takes issue with the failure to grant it an exemption for it to operate without a certificate to carry out recycling of materials the franchisees place in the landfill.  Even assuming the delegation of authority over waste management required defendant to "maximize" recycling and recycle all materials capable of reuse or recycling,[3] plaintiff has improperly challenged such failure in this Court by seeking to assert the exemption process is in violation of this Court's authority.  Any party to any process or proceeding before or by a tribunal may have the decision or determination thereof reviewed for errors, as provided in Or. Rev. Stat. §§ 34.010 to 34.100, and not otherwise.  Or. Rev. Stat. § 34.020.

---

[3] The legislature only directed counties to consider the policies contained in Or. Rev. Stat. § 459.015.  Or. Rev. Stat. § 459A.085(10)(a).

Page 11 – FINDINGS & RECOMMENDATION

A writ of review, made within 60 days of the date of decision, shall be allowed by the state circuit court. Or. Rev. Stat. § 34.030. The writ shall be allowed when a plaintiff's substantial interest has been injured and the tribunal appears to have exceeded its jurisdiction, failed to follow procedure, made a finding not supported by substantial evidence, improperly construed applicable law, or rendered an unconstitutional decision. Or. Rev. Stat. § 30.040. The circuit court shall have the power to modify, reverse or annul the decision and, if necessary, award restitution. Moreover, the court's decision may be reviewed in the same manner as any other decision of the circuit court. Or. Rev. Stat, § 34.100. As such, if plaintiff believes the GRAC decision is in violation of state law, it should have sought review in Washington County Circuit Court and not by bringing a preemption claim in federal court. Accordingly, defendant's motion to dismiss the preemption claim and claim for declaratory relief should be granted and claims one and four should be dismissed.

C.    Due Process Claims

In its second claim for relief, plaintiff asserts defendant wrongfully interfered with its property rights without due process. In its third claim for relief, plaintiff asserts defendant's action in threatening prosecution of plaintiff for operating in Washington County was arbitrary and unreasonable and violated its substantive due process rights.

The only named defendant is Washington County. Plaintiff seeks to impose liability for the alleged constitutional violations on the County for the actions of the employees comprising the GRAC. Defendant asserts plaintiff has failed to plead sufficient facts demonstrating liability is properly asserted against the County.

Although public bodies are "persons" within the meaning of the statute, such a body "may not be held liable under [section] 1983 merely because it employs a tortfeasor." Board of County

Comm'rs v. Brown, 520 U.S. 397, 403 (1997). "In other words, respondeat superior liability does not apply in section 1983 actions." T.R. v. Boy Scouts of America, 344 Or. 282, 290, 181 P.3d 758, cert. den., 555 U.S. 825 (2008). Instead, the public body must, itself, "be the actor, and its own actions must violate the citizen's constitutional rights." Id. Thus, a plaintiff seeking recovery from a government body must identify a "'policy' or 'custom' that caused the plaintiff's injury." Brown, 520 U.S. at 403. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, (1978). Official policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are actions for which the [government actor] is actually responsible." Connick v. Thompson, 563 U.S. 51, 61 (2011) (internal citation, brackets, and quotation marks omitted); see St. Louis v. Praprotnik, 485 U.S. 112, 126–27 (1988) (government policy or custom is one that is authorized by an official with final policy-making authority); Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under [section] 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

Plaintiff alleges that because the GRAC did not make a favorable decision, the County Board of Commissioners was not given an opportunity to decide on the exemption or overrule the GRAC. The Complaint sufficiently alleges facts demonstrating that for purpose of denying an exemption, the County has made the GRAC a final policy-maker and thus the County may be liable for its allegedly unconstitutional action in denying an exemption request.

Defendant also argues that because plaintiff had adequate state remedies, via review under Or. Rev. Stat. § 30.020, it cannot claim its right to due process was violated because it failed to avail itself of such review.  While the availability of adequate post-deprivation remedies may suffice to provide constitutionally sufficient due process, such remedies only negate a claim for due process violation when the complained-of-action results from random and unauthorized actions.  See Zinermon v. Burch, 494 U.S. 113, 132 (1990) (In situations where the State feasibly can provide a pre-deprivation hearing before taking property, it generally must do so regardless of the adequacy of a post-deprivation tort remedy to compensate for the taking.).   It is the negligent or intentional deprivation of property without a pre-deprivation hearing that does not give rise to a due process claim if the deprivation was random and unauthorized but provided post-deprivation safeguards.  See Parratt v. Taylor, 451 U.S. 527, 535–44 (1981); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A defendant in the employ of a state or local government acts in a random and unauthorized manner if (1) his conduct was unforeseeable; (2) his conduct was unauthorized and executed in violation of state procedure; and (3) pre-deprivation procedures would have been impracticable under the circumstances. Zinermon, 494 U.S. at 136–38.  If the deprivation is deemed random and unauthorized, availability of an adequate post-deprivation remedy precludes relief because it affords constitutionally sufficient procedural due process. Id. at 128.

Here, plaintiff alleges it was the statutory authority granting the GRAC the ability to deny the exemption that resulted in the deprivation, not a random and unauthorized act.  Where the County has procedures or regulations designed to control the actions of officials, and those officials charged with carrying out the policy act under the apparent authority of those directives, it is nonsensical to argue either that their conduct is "random" or that it is impossible for the County to provide a hearing in advance of the deprivation.  See Sinaloa Lake Owners Ass'n v. City of Simi

Valley, 864 F.2d 1475, 1482 (9th Cir. 1989).  As noted, plaintiff has alleged the County Board of

Commissioners instituted a policy of no review when the GRAC denies an exemption.  Therefore,

concluding that denial of the exemption request is not authorized or random is illogical.  Thus, the

availability of review under Or. Rev. Stat. § 30.020 does not preclude a due process claim in this

case.

Defendant further contends that the complaint fails to allege deprivation of a protected

property interest because plaintiff has no claim of entitlement to collect waste material in

Washington County.  At this stage of the proceedings, it is sufficient that plaintiff alleges it was

prevented from doing business in Washington County and that it was deprived of its business

goodwill.  See Speed's Auto Servs. Grp., Inc. v. City of Portland, Or., 2014 WL 2809825, at *5

(D. Or. June 20, 2014) (a regulation that completely bars plaintiff's pursuit of an occupation

supports a claim for violation of due process rights); Westwood v. City of Hermiston, 787 F. Supp.

2d 1174, 1197 (D. Or. 2011) (claims for damages to the goodwill of a business is a protectable

property interest).

Finally, defendant asserts a right to conduct business in Washington County does not rise

to the level of an interest protected by the substantive elements of the Fourteenth Amendment.

However, an arbitrary bar to pursuit of an occupation is sufficient to allege a substantive due

process claim.  See Dittman v. State of California, 191 F.3d 1020, 1029 (9th Cir.1999).[4]

Accordingly, defendant's motion to dismiss plaintiff's due process claims should be denied.

---

[4] A brief interruption is not sufficient to allege a substantive due process claim.  Even though a temporary rule now permits plaintiff to restart operations, the Court declines to find, for purposes of the motion to dismiss, that plaintiff has not sufficiently alleged a substantive due process violation based on the post-complaint temporary rule.

CONCLUSION

Plaintiff's request for judicial notice (ECF <u>18</u>) is granted.  Defendant Washington County's motion to dismiss (ECF <u>12</u>) should be granted in part and denied in part.  The motion should be granted with respect to plaintiff's preemption claim and claims for declaratory and injunctive relief and denied with respect to plaintiff's due process claims.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 16th day of May, 2022.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge